**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 14-12894-SBB |
| AMERICAN TITLE SERVICE COMPANY ) | |
| ) | Chapter 11 |
| Debtor ) | |

**EX-PARTE MOTION FOR AUTHORITY TO CONDUCT EXAMINATIONS AND COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004 ON THE STATE OF COLORADO**

Debtor by and through its undersigned attorneys, pursuant to Bankruptcy Rule 2004, and LBR 2004-1 hereby files this Motion for Authority to Conduct Examinations and Compel Production of Documents for inspection and copying Pursuant to Fed.R.Bankr.P. 2004 on the State of Colorado and in support thereof states as follows:

CERTIFICATION:

Debtor's counsel hereby certifies that he attempted to contact the attorney for the State of Colorado and attempted to obtain the information sought in this Motion but as of the time of filing this motion, counsel has not returned the call.

### I. FACTUAL BACKGROUND

1. On or around March 13, 2014 Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. Debtor was engaged in the title insurance agency and real estate closing business. It acted as an agent for Title Resources Guaranty Company ("TRGC") who was Debtor's underwriter for title insurance policies issued on its behalf. Debtor had eight offices located in the front range of Colorado. Debtor conducted real estate closings on behalf of its clients for thousands of real estate transactions in Colorado.

2. On or around February 4, 2014, Debtor's founder, Chairman of the Board and President Richard Talley committed suicide. Upon information and belief, Debtor believes a criminal investigation has been commenced by the State of Colorado into the activities of the Debtor's former management.

3. On or around February 7, 2014, the Debtor terminated the employment of substantially all of its employees and Debtor ceased business in the ordinary course. Counsel for Debtor has sought to interview certain former employees of Debtor, but because of a pending criminal investigation has been unable to do so.

4. On or around February 10, 2014, TRGC commenced an action against Debtor and related entities in the U.S. District Court for the District of Colorado, Case No. 14-CV-00366-

RM-BNB. In that action, TRGC sought a temporary restraining order against Debtor along with other relief.

5. On or around February 10, 2014, TRGC took possession of many of the Debtor's books, records, files, and computers. Upon information and belief, TRGC has hired several of Debtor's employees. TRGC has made some of the computer files available to Debtor, but Debtor has so far been unable to retrieve accounting information in a usable form from the records provided.

6. Because landlords to Debtor's offices changed the locks on some of its offices and otherwise barred Debtor access to its office space, Debtor was unable to review company records at its offices until on or around February 25, 2014 when the landlord at Debtor's main office allowed counsel for Debtor access to its offices for the purpose of inventorying and retrieving the books and records remaining at the Debtor's office. On that date, while counsel was in the company offices inventorying the company records, the Colorado Division of Insurance and the Criminal Investigation Division of the Colorado Attorney General's Office (along with a deputy sheriff from Arapahoe County) barred counsel from removing any files or records from the office and took possession of the Debtor's company records.

7. Upon information and belief, the State of Colorado may have also taken possession of some of the records held by TRGC pursuant to a warrant issued by the Arapahoe County District Court. Although Debtor has requested, Debtor has not been granted access to the records by the State of Colorado. Among the records the State of Colorado seized were the records of Debtor's in-house counsel's files containing attorney client and work product privileged documents.

8. Counsel for Debtor has not had access to its records, rank and file employees, nor the normal access to information sufficient to provide good faith answers to all of the allegations contained in the TRGC Complaint. Further, the lack of access to the Debtor's books and records has stymied Debtor's efforts to obtain the necessary information to complete its bankruptcy schedules and determine the assets and liabilities of Debtor.

9. The State of Colorado has not indicated any willingness to provide Debtor access to any company records or computer servers. Debtor's counsel needs access to the company files, records, and original computer files to complete the preparation of its schedules, creditor matrix, defend itself in litigation, investigate and determine the assets of Debtor, determine if avoidable transfers exists, and determine whether there are other claims or actions Debtor may have.

10. At the time of the filing of the petition in this case, Debtor had a number of insurance policies, including but not limited to a life insurance policy on the life of Debtors former President, Richard Talley, a fidelity crime policy, and errors and omissions policy, an umbrella policy from Lloyds of London, and a general commercial liability policy. The face amount of the policies exceeds $3 million. Recovery on the policies may provide a source for recovery for the Debtor's creditors. Upon information and belief, the originals of the insurance policies are in the possession of TRGC or the State of Colorado. Further, the files relating to those policies are in the possession of TRGC or the State of Colorado. Debtor requires the

G:\A-D\AMERICAN TITLE 11166\003 American Title Bankruptcy\Pleadings\14-03-10 Mtn for 2004 Examination\Motion for 2004 Examination State of Colorado.doc

-2-

original policies to process claims on those policies and access to the files relating to those policies to develop the information necessary to process these claims.

11. Upon information and belief, Debtor has other assets, such as office furniture and equipment, its interest in the Denver Metropolitan area title plant and executory contracts that have value. However, Debtor requires possession of the records to determine the value of the assets and to preserve and protect the same.

12. Good cause exists for the entry of an order authorizing the requested Rule 2004 examination and production of documents. The State of Colorado is believed to have substantial and detailed information regarding the Debtor's businesses, financial dealings, assets, financial condition and transfers of property in its possession.

## II. AUTHORITIES

13. B.R.P. 2004(a) provides that on motion of any party in interest, the court may order the examination of "any entity." "Entity" includes any person, estate, trust, governmental unit, and the U.S. Trustee. 11 U.S.C. § 101(15). The motion may be heard *ex parte*. See Advisory Committee Note to B.R.P. 2004.

14. B.R.P. 2004(d) provides that the court may for cause shown and on terms as it may impose order the entity to be examined at any time or place it designates, whether within or without the district wherein the case is pending. The scope of the examination under Rule 2004 may relate to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the estate or the debtor's right to a discharge. In a Chapter 11 case, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for the purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

15. It is well-established that the scope of an examination under Bankruptcy Rule 2004 is unfettered and broad. *In re Vantage Petroleum Co.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). Indeed, the examination can "legitimately be in the nature of a 'fishing expedition'". *In re M4 Enterprises, Inc.*, 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995). *See also, In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("Rule 2004 permits a party invoking, it to undertake a broad inquiry of the examiner, in the nature of a fishing expedition"); *In re Frigitemp Corp.*, 15 B.R. 263, 264 n. 3 (Bankr. S.D.N.Y. 1981) (noting that predecessor to Rule 2004 examinations have been likened to "fishing expeditions").

16. Examinations under Bankruptcy Rule 2004(a) and (c) may include within their scope, among other things, any matter which may relate to the property and assets of the estate, the financial condition of the debtor and any matter which may affect the administration of a debtor's estate. "The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." *In re Coffee Cupboard, Inc.*, 128 B.R. 590, 514 (Bankr. E.D.N.Y. 1991) (*citing Cameron v. United States*, 231 U.S. 710, 717 (1914)). "Because the purpose of the Rule 2004 investigation is to aid in the discovery of assets, any third party

G:\A-D\AMERICAN TITLE 11166\003 American Title Bankruptcy\Pleadings\14-03-10 Mtn for 2004 Examination\Motion for 2004 Examination State of Colorado.doc

-3-

who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs, Inc.,* 156 B.R. 414,432 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994). *See also, In re Ecam Publications, Inc.,* 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) (third parties may be subject to examination if they have knowledge of the debtors' affairs).

17. The information sought by Debtor from the State of Colorado is required for Debtor to better understand the nature of the Debtor's businesses, its relationships and dealings between its related businesses, the financial condition of the Debtor and this estate and the value of the Debtor's businesses and property interests. These matters clearly "may affect the administration of the Debtor's estate, and relate to the property of the Debtor" and/or "any other matter relevant to the case or to the formulation of a plan." Fed.R.Bankr.P. 2004(b).

18. Debtor requests that the Court enter an order, subject to Debtor's service of such order authorizing the relief requested herein: (a) within seven (7) days after service of the Order at the offices of Markus Williams Young & Zimmerman LLC, 1700 Lincoln Street, Suite 4550, Denver, Colorado 80203 or such other location, date and time as Debtor and TRGC and the State of Colorado may agree, produce the representatives or agents who seized Debtor's records for examination under oath; (b) that TRGC and the State of Colorado shall produce the original insurance policies and files to Debtor for copying or inspection; (c) that TRGC and the State of Colorado within two days of the service of the Order provide to Debtor an inventory of all records, computers, and other property seized the State of Colorado in writing, and (d) allow the Debtor's counsel and agents to inspect and copy all of the documents that the State of Colorado seized within two (2) days after service of the Order.

WHEREFORE, Debtor respectfully requests that the Court enter an order in substantially the same form as that attached hereto as required above.

Respectfully submitted this 14th day of March, 2014.

        MARKUS WILLIAMS
        YOUNG & ZIMMERMANN LLC

        *s/Steven R. Rider*
        Steven R. Rider, #7921
        1700 Lincoln Street, Suite 4550
        Denver, Colorado 80203-4505
        Telephone (303) 830-0800
        Facsimile (303) 830-0809

        *Attorneys for Debtor*

## INSTRUCTIONS

a)       All documents are to be produced which are in your possession, custody or control or can be obtained upon reasonable investigation of areas within your control. All documents in the possession, custody or control of any of your attorneys, except privileged matters, must be produced.

b)       These requests are intended to be continuing and you are instructed to make prompt, further and supplemental production whenever an additional document is discovered that is responsive hereto.

c)       Each request should be construed independently. No request should be construed by reference to any other document request for the purpose of limiting the scope of the answer to such document request.

d)       If any request is objected to, in whole or in part, set forth the legal basis for each objection, and set forth the facts upon which you rely as the basis for each objection.

e)       If any document(s) responsive to a request are withheld, on the ground of privilege or otherwise, set forth the factual and legal basis for withholding such document, its present location and custodian, and such additional information as may be required to enable it to be identified and to enable the Court to adjudicate the propriety of the withholding, including, but not limited to, the type of document, its date, author(s), addressee(s), recipient(s), and its general subject matter.

f)       The singular shall be deemed to include the plural and vice versa so as to bring within the scope of each request all documents which might otherwise be construed to be outside its scope.

g)       Each specific request shall be deemed to include all attachments to the specifically described documents, and all envelopes, explanatory notes or memoranda, and all material included in the category. If the document was itself a response, the document to which it is responding is included in the category.

## DEFINITIONS

As used herein:

a)       The term "documents" is used in its broadest sense and means the originals and any and all copies of any and all written, printed, typed or otherwise recorded matter or writings, however produced or reproduced, of every kind and description, in whatever form, (e.g. final and draft versions) in your actual or constructive possession, custody, care or control, including but not limited to, all writings, e-mail messages, contracts, policy statements, manuals, telephone messages, checks, correspondence, letters, telegrams, notes, mailgrams, minutes of any meetings, agendas, memoranda, inter-office communications, reports, studies, forecasts, project analysis, working papers, charts, expense account reports, ledgers, journals, financial statements, statements of account,

G:\A-D\AMERICAN TITLE 11166\003 American Title Bankruptcy\Pleadings\14-03-10 Mtn for 2004 Examination\Motion for 2004 Examination State of Colorado.doc

-5-

calendars, appointment books, diaries, drawings, graphs, photographs, sound recordings, computer documents or any other tangible thing which constitute or contain matters within the scope of Fed. R. Civ. P. 34(a) and/or Fed. R. Evid. 1001. The term "documents" also means originals and copies of all of the above upon which notations in writing, print, or otherwise have been made which do not appear on the originals, as well as e-mail and/or voicemail recordings, archival copies of magnetically or optically recorded documents, documents that have been logistically deleted but not physically erased, and the actual media (whether magnetic, optical or other) that have been used to record or store documents, including backup or archive media.

b)   The term "Debtor" refers to American Title Services Company in its capacity as a debtor in the bankruptcy case filed in the United States Bankruptcy Court for the District of Colorado.

c)   The term "you" or "your" refers to the ATGF and/or the State of Colorado (both individually and collectively) and also each agent, servant, employee, representative, attorney for, consultant of or anyone else purporting to act, directly or indirectly, on your behalf or under the control or direction of any one or all of ATGF and/or the State of Colorado.

d)   The term "communication" includes without limitation every discussion, conversation, conference, meeting, interview, telephone call, letter, memorandum or other writing or electronic transmission intended to communicate.

e)   The term "writings" as used in these requests means handwriting, typewriting, printing, photostating, photographing and every other means of recording upon any tangible thing any form of communication or representation, including letters, records, pictures, sounds or symbols or combination thereof; and which includes computer discs, computer hard drives, and all other devices (e.g., zip drives, magnetic tape) used to store computer files.

f)   The term "relates to" and "relating to" mean in any way directly or indirectly, concerning, referring to, pertaining to, mentioning, discussing, describing, disclosing, confirming, supporting, evidencing, representing, or being connected with a stated subject matter or any aspect thereof.

g)   The term "person" means any or all entities, including, but not limited to, any or all individuals, single proprietorships, associates, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental, or labor entity, and any divisions, departments, or other units thereof.

h)   The term "time period" refers to the period of time from January 1, 2011 to the date of your production of documents. Unless otherwise indicated in a specific document request, the documents to be produced shall be documents created or prepared during the time period.

G:\A-D\AMERICAN TITLE 11166\003 American Title Bankruptcy\Pleadings\14-03-10 Mtn for 2004 Examination\Motion for 2004 Examination State of Colorado.doc

-6-